**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GILBERT CAMBALIZA,<br><br>      Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>      Defendant. | Case No. CV 13-3706 JCG<br><br>**MEMORANDUM OPINION AND ORDER** |

Gilbert Cambaliza ("Plaintiff") challenges the Social Security Commissioner's decision denying his application for disability benefits. Four issues are presented for decision here:

1. Whether the Administrative Law Judge ("ALJ") made contradictory findings regarding the severity of Plaintiff's impairments and whether he meets a Listing, (*see* Joint Stip. at 3-4, 6-7);

2. Whether the ALJ's decision to utilize the Medical-Vocational Guidelines ("Grids") at step five was proper, (*see id.* at 7-10, 13-14);

3. Whether the ALJ properly evaluated Plaintiff's credibility, (*see id.* at 14-15, 17-18); and

4. Whether the ALJ improperly rejected Plaintiff's treating physicians.

(*See id.* at 18, 20-21.)

The Court addresses, and rejects, each argument in turn.

A. <u>The ALJ's Severity and Listing Findings</u>

Plaintiff first argues that the ALJ contradicted himself because "it is erroneous to find that a Plaintiff has a severe mental impairment, but no more than mild limitations in terms of the "B" criteria. This is a legal impossibility." (*Id.* at 4.) Plaintiff, however, is mistaken.

The ALJ properly found Plaintiff's mental impairments to be severe at step two. Step two serves as a "'*de minimis* screening device to dispose of groundless claims.'" *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) (citation omitted). The regulations direct an ALJ to find a mental impairment severe when a claimant *either* suffers moderate limitations in activities of daily living, social functioning, or concentration, persistence, or pace, *or* has "more than a minimal limitation on [his] ability to do basic work activities." 20 C.F.R. § 404.1520a(c)(4).

Here, the ALJ found that Plaintiff's depression and anxiety had no effect on his daily activities or social functioning, and a mild effect on his concentration, persistence, or pace. (Administrative Record ("AR") at 15.) Nevertheless, the ALJ gave Plaintiff the benefit of the doubt that his impairments constituted "more than a minimal limitation" on his ability to work, and properly found them to be severe.

But in so holding, the ALJ was *not* required to find that Plaintiff's depression and anxiety rise to the level of a Listing. To the contrary, it is *Plaintiff's* burden to set forth evidence supporting the findings of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). To meet his burden for Listing 12.04, 12.06 or 12.09 specifically, Plaintiff must demonstrate, among other things, that he satisfies the "Paragraph B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A. In particular, Plaintiff must prove that his mental impairments cause at least two of the following: marked deficiencies in either activities of daily living, maintaining social functioning, or concentration, persistence or pace, or repeated episodes of

deterioration or decompensation. *See id.* §§ 12.04B, 12.06B, 12.09B.

Here, Plaintiff fails to prove that he meets a Listing. As noted above, the ALJ found that Plaintiff's depression and anxiety had no effect on his daily activities or social functioning, and only a mild effect on his concentration, persistence, or pace. (AR at 15.) Likewise, the ALJ found no episodes of decompensation. (*Id.*) In support of these findings, the ALJ relied on consultative examiner Deborah Digiaro and state agency consultant S. Bortner. (*See id.* at 15, 18.)

Dr. Digiaro examined Plaintiff and found that he:

> can perform simple and repetitive tasks; he has the ability to do detailed and complex tasks; he can accept instructions from supervisors and interact with co-workers and the public; he can perform work activities on a consistent basis without special or additional instruction; he would be able to maintain regular attendance in the workplace; he can complete a normal/work week without interruptions from a psychiatric condition; and, he can deal with the stress encountered in a competitive environment.

(AR at 16, 226-27); *see Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (when an examining physician provides "independent clinical findings . . .," such findings constitute "substantial evidence.") (citation omitted). Dr. Bortner, for his part, reviewed Plaintiff's medical record, specifically considering the "Paragraph B" criteria, and found no more than mild limitations, and no episodes of decompensation. (AR at 16, 228-41); *see Thomas v. Barnhart*, 278 F.3d 948, 957 (9th Cir. 2002) ("The opinions of non-treating or nonexamining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

Accordingly, there is no contradiction between the ALJ's severity and Listing findings, and the ALJ properly determined that Plaintiff does not meet a Listing.

B. The ALJ's Reliance on the Grids at Step Five

Plaintiff next contends that the ALJ erred at step five by relying on the Grids instead of testimony from a vocational expert ("VE"). (*See* Joint Stip. at 7-10, 13-14.) Specifically, Plaintiff argues that reliance on the Grids is improper where, as

3

here, non-exertional limitations are present. (*Id.* at 9-10.)

However, as a matter of law, testimony from a VE is required *only if* a claimant's non-exertional impairments are *sufficiently severe* so as to "significantly limit the range of work permitted by the claimant's exertional limitations." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (citing *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988)).

In this case, Plaintiff's Residual Functional Capacity ("RFC") restricted him to medium exertion, unskilled work with two non-exertional limitations:[1] (1) "avoid working at heights," and (2) "mild limitations in ability to maintain concentration, persistence or pace." (AR at 16.) Neither of these non-exertional limitations restrict the range of medium unskilled work so significantly that VE testimony is required under *Hoopai*.

### 1. Avoid Working at Heights

With respect to the first limitation, the Social Security Rulings indicate that a limitation to avoid working at heights would not ordinarily have a significant impact on the range of available work. *See* Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *6; *see Salgado v. Astrue*, 2011 WL 717251, at *5 (C.D. Cal. Feb. 22, 2011) (ALJ did not err in relying on the Grids where claimant's non-exertional limitations included, among other things, unprotected elevations) (citation omitted). Thus, at least on this ground, *Hoopai* is not violated.

---

[1] Plaintiff alleges the existence of additional non-exertional impairments based upon the ALJ's determination that Plaintiff's depression and arthritis are severe. (*See* Joint Stip. at 9-10.) This determination, however, was made at *step two*, not at step five. "The step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five." *Hoopai*, 499 F.3d at 1076. Thus, to the extent that these "severe" impairments are not already reflected in Plaintiff's RFC, they bear no weight on the appropriateness of the Grids at step five.

2.  <u>Simple, Routine Tasks</u>

As for the second restriction, the Ninth Circuit has opined that *mild to moderate* mental limitations are insufficiently severe to have a significant impact on a claimant's base of unskilled work. *See Hoopai*, 499 F.3d at 1077 (discussing mild to moderate symptoms of depression); *see* 20 C.F.R. §§ 404.1568(a), 416.98(a) (defining unskilled work as needing little or no judgment to do simple duties that can be learned in a short period of time).

Here, as described above, the ALJ properly accepted the opinions of Drs. Digiaro and Bortner in finding that Plaintiff had only mild limitations in concentration, persistence, or pace. (*See* AR at 16.) Because Plaintiff's limitations are well below moderate, they are insufficiently severe under *Hoopai.*

Accordingly, the ALJ's step-five determination did not improperly rely on the Grids, and is, therefore, supported by substantial evidence. *See Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).

C.  <u>The ALJ's Rejection of Plaintiff's Credibility</u>

Next, Plaintiff argues that the ALJ improperly rejected his credibility. (*See* Joint Stip. at 14-15, 17-18.) The Court disagrees for the following four reasons.

An ALJ can reject a claimant's subjective complaints by expressing clear and convincing reasons for doing so. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).

First, the ALJ properly found that the objective medical evidence does not support Plaintiff's alleged degree of disability. *See Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (lack of objective evidence, when combined with other factors, is a valid reason for rejecting Plaintiff's testimony). Specifically, Plaintiff's objective testing results for arthritis and hypertension appear consistently mild. (*See, e.g.*, AR at 218, 220, 246-51.) Indeed, treatment notes indicate that on November 10, 2011, Plaintiff reported a "pain assessment level of zero." (*Id.* at 17, 259.) As to his mental impairments, Plaintiff reported that "his medications are

5

helping his anxiety." (*Id.* at 17, 258.) Moreover, Plaintiff's two consultative examiners indicated that he is able to work with minor limitations. (*Id.* at 217-41.)

Second, the ALJ properly discounted the alleged severity of Plaintiff's symptoms because the record reflects minimal and conservative treatment. (*Id.* at 19); *see Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (ALJ properly considered discrepancies between allegations of "persistent and increasingly severe" pain, and the extent of treatment obtained). Here, despite complaining of severe pain, Plaintiff only visited his physicians for general health issues, and never reported disabling pain. (AR at 166-213, 259.)

Third, the ALJ properly noted that Plaintiff was not forthcoming with the extent of his alcohol use. (*Id.* at 16); *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (ALJ may rely on inconsistent statements to find claimant not credible). Here, Plaintiff testified that he stopped drinking entirely in 2010. (AR at 16, 48.) To the contrary, however, Plaintiff told his treating physician that he was drinking 48 ounces of beer a day in 2011. (*Id.* at 273.)

Lastly, the ALJ properly considered Plaintiff's poor work history. (*Id.* at 19); *see Thomas*, 278 F.3d at 959 (claimant's "extremely poor work history" supports negative credibility determination). In particular, Plaintiff's earnings records reflect that he worked only sporadically in the six years before he alleged disability. (AR at 113.) On these facts, the ALJ reasonably concluded that Plaintiff's lack of work was not due to his alleged disability, but to some other factor. (*Id.* at 19-20); *see Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (ALJ's findings must be upheld if supported by inferences reasonably drawn from the record).

Accordingly, the Court finds that the ALJ's determination of Plaintiff's credibility is supported by substantial evidence. *See Mayes*, 276 F.3d at 458-59.

D. <u>The ALJ's Rejection of Plaintiff's Treating Physicians</u>

Finally, Plaintiff argues that "the ALJ erred by not assigning controlling weight to the opinions of [his] treating physicians," Drs. Gilbert Saul and Ashley

6

Benjamin. (*See* Joint Stip. at 17-18.) But the "treating physician's opinion is not necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Moreover, an ALJ may discount the treating physician's opinion entirely when it is not supported by objective evidence. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

1. <u>Dr. Gilbert Saul</u>

The ALJ properly gave "very little" weight to Dr. Saul's "Short-Form Evaluation for Mental Disorders" for three reasons. (*See* AR at 18-19.)

First, the ALJ properly noted that Dr. Saul's check-off form is not supported by "appropriate diagnostic examination along with a description of results." (*Id.* at 19); *see Batson*, 359 F.3d at 1195 (ALJ properly rejects a treating physician's opinion when it is conclusory, brief, and unsupported); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ may reject check-off forms that do not explain bases for their conclusions). Indeed, Dr. Saul met Plaintiff only once before filling out his questionnaire and provided *no* treatment notes whatsoever. (*See* AR at 270-79.)

Next, the ALJ properly rejected Dr. Saul's opinion because it lacked objective support in the record. (*Id.* at 25); *see Magallanes*, 881 F.2d at 753. Preliminarily, as noted above, Plaintiff's records are limited because he did not routinely seek medical care.[2] (*See generally id.*) As for the evidence that *is* before the Court, again, Plaintiff's test results for arthritis and hypertension were consistently mild. (*See id.* at 218, 220, 246-51.) Plaintiff's mental conditions were likewise observed to be mild, and responded well to medication. (*Id.* at 221, 223-40.) Notably, Dr. Saul himself performed no objective testing to support his prescribed limitations.

---

[2] While limited, there is no indication that "the record contains ambiguous evidence or is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459. Accordingly, the "ALJ's duty to develop the record" does not appear to be triggered here. *See id.*

1  Finally, the ALJ rejected Dr. Saul's opinion as "based primarily on the
2  subjective statements of [Plaintiff]." (*Id.* at 19); see *Fair*, 885 F.2d at 605 (ALJ
3  properly rejected treating physician's report because that opinion was premised on
4  claimant's subjective complaints, which the ALJ properly discounted). Here Dr.
5  Saul's check-off form appears to mimic Plaintiff's subjective statements, which were
6  properly rejected above. (*See* AR at 270-79.)

7  As such, the ALJ properly gave limited weight to Dr. Saul's opinion.

   2.  Dr. Ashley Benjamin

8  Similarly, the ALJ properly rejected Dr. Benjamin's Global Assessment of
9  Functioning ("GAF") score because the GAF, as a method for evaluating the
10 severity of impairments, has been specifically rejected by the Social Security
11 Administration. *See* 65 Fed. Reg. 50746-01, 2000 WL 1173632, at *50746-47
12 (Aug. 21, 2000). As the regulations point out, a GAF score fails to capture a
13 claimant's longitudinal health. *Id.* Indeed, as the ALJ further expounded, "such
14 subjectively assessed scores review only snapshots of impaired, then improved
15 behavior." (AR at 19.) Accordingly, a GAF score alone cannot establish disability.

16 Further, in rejecting Drs. Saul and Benjamin, the ALJ gave great weight to the
17 two consultative examiners and state agency consultant. (*Id.* at 18.) All three
18 opinions constitute substantial evidence in support of the ALJ's decision.

19 The examining opinions of Drs. Digiaro and Sodager-Marvasti amount to
20 substantial evidence because they rest on "independent clinical findings." *See Orn*,
21 495 F.3d at 63. Dr. Digiaro's clinical findings have already been detailed above.
22 Dr. Shahrzad Sodager-Marvasti, for her part, likewise examined Plaintiff, performed
23 objective testing, and provided an in-depth narrative report of her findings. (AR at
24 217-22.) Testing revealed normal muscle strength and average range of motion in
25 Plaintiff's back, arms, and legs. (*Id.* at 220.) Based on her mild objective findings,
26 Dr. Sodager-Marvasti opined that Plaintiff could perform medium work with
27 minimal non-exertional limitations. (*Id.* at 222.) Notably, Dr. Sodager-Marvasti is

the only physician of record to render an opinion concerning Plaintiff's *physical* limitations. (*See generally id.*)

Finally, Dr. Bortner's non-treating, non-examining opinion constitutes substantial evidence because "the opinion[ is] consistent with independent clinical findings or other evidence in the record." *See Thomas*, 278 F.3d at 957. Here, Dr. Bortner's opinion is consistent with other evidence in the record. In particular, as discussed previously, Dr. Bortner's opinion closely coincides with that of Dr. Digiaro. For instance, both Drs. Bortner and Digiaro diagnosed Plaintiff with alcohol induced anxiety and depression. (AR at 226, 233.) Both doctors further found that Plaintiff suffered only mild difficulties in maintaining concentration, persistence or pace. (*Id.* at 222, 238.)

Accordingly, the ALJ properly rejected the opinions of Drs. Saul and Benjamin[3/] and properly relied on those of Drs. Digiaro, Sodager-Marvasti, and Bortner. As such, the ALJ's decision is supported by substantial evidence.

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits.

Dated: May 15, 2014

_____
Hon. Jay C. Gandhi
United States Magistrate Judge

---

[3/] Plaintiff also suggests that the ALJ erred in his RFC determination by excluding the findings of Drs. Benjamin and Saul. (*See* Joint Stip. at 6.) But the ALJ is "not required to incorporate evidence from the opinions of . . . treating physicians" that have been "permissibly discounted." *Batson*, 359 F.3d at 1197.